IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST AMERICAN BANK, et al.,       )
                                   )    Case No. 14 C 8120
                    Plaintiffs,    )
                                   )
        v.                         )
                                   )    Honorable John Robert Blakey
RBS CITIZENS, N.A.,                )
                                   )
                    Defendants.    )

MEMORANDUM OPINION AND ORDER

Plaintiffs, First American Bank (individually and as subrogee of First Aid
Corporation d/b/a 1st Ayd Corporation) and Federal Insurance Company (as
subrogee and assignee of First American Bank), have sued defendants Federal
Reserve Bank of Atlanta, RBS Citizens, N.A. d/b/a Charter One (collectively, the
"bank defendants"), and David Goodson "to recover for the defendants' participation
in the transfer and collection of a fraudulent check in the amount of $486,750.33
and for professional negligence." Amended Complaint [6], ¶1. The bank defendants
have moved to dismiss the claims against them [21] for failure to state a claim. For
the reasons explained below, the motion is granted.

Background

In their amended complaint, the plaintiffs allege defendant David Goodson
received an email from "Fumiko Anderson" seeking his assistance in recovering
funds owed pursuant to a divorce proceeding. Amended Complaint [6], ¶16.
Goodson then received a check, via UPS delivery from Ontario, Canada, in the

amount of $86,176.96; the check was made payable to the "Law Office of David M. Goodson" and "drawn by" First Aid Corporation on its account at First American. *Id.*, ¶¶17-18. Goodson endorsed the check and deposited it in his client trust account at RBS Citizens. *Id.*, ¶19. He then "caused RBS Citizens to wire some or all of the funds . . . to Japan." *Id.*, ¶21. The plaintiffs further allege that RBS "took an electronic image of the check, transferred the image through the Federal Reserve System for payment by First American, and destroyed the original check." *Id.*, ¶22. The Complaint does not seek damages or make any claims with respect to this check.

The plaintiffs further allege in their amended complaint that Goodson received a second check in November 2013; this check too arrived via UPS from Ontario, Canada, was made payable to the "Law Office of David M. Goodson" and was drawn by First Aid Corporation on its account at First American. *Id.*, ¶23. As before, Goodson endorsed the second check and deposited it into his client trust account at RBS Citizens; that same day, he caused RBS to wire some or all of the funds to Japan. *Id.*, ¶¶24, 26. Again, plaintiffs allege, RBS took an electronic image of the check, transferred the image through the Federal Reserve System for payment by First American, and destroyed the original check. *Id.*, ¶25.

Both checks were fraudulent, as the parties later learned. Amended Complaint [6], ¶¶4, 20, 27. As a result, First American re-credited First Aid Corporation's account for both amounts and then sought indemnity from RBS. RBS indemnified First American for the first check, but not the second. *Id.*, ¶¶27-28.

First American and its insurer, Federal Insurance Company (which indemnified First American for a portion of its losses with regard to the second check), *id.*, ¶29, sued RBS and the Federal Reserve Bank of Atlanta (according to the amended complaint, RBS transferred the item through the Federal Reserve System for payment by First American, and the Federal Reserve Bank of Atlanta was the immediate transferor of the item to First American). Amended Complaint [6], ¶5. They also sued Goodson for his part in the transaction. The amended complaint includes four counts: Counts I and II assert claims of breach of warranty under Regulation J, 12 C.F.R. §210.6, and restitution by mistake under 810 ILCS 5/3-418 against all defendants; Count III asserts a claim of negligent spoliation of evidence against RBS; and Count IV asserts a claim of professional negligence against Goodson. Goodson filed an answer to the amended complaint [19], claiming that he had no idea the checks were fraudulent. The bank defendants moved to dismiss the counts against them, arguing that none pleads a claim for which relief may be granted.

## Discussion

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.' " *Doe v. Village of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When analyzing a motion under Rule 12(b)(6), the Court must construe the allegations of the operative complaint in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts and drawing all reasonable inferences in their favor. *E.g., Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)(citing Fed. R. Civ. P. 12(b)(6); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). Additionally, Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

As explained above, the bank defendants have moved to dismiss the claim for breach of warranty in violation of Regulation J (Count I), the claim for restitution for payment by mistake (Count II) and the spoliation claim (Count III) for failure to state a claim.

A.     Plaintiffs' Claim for Breach of Warranty in Violation of Regulation J

In Count I, the plaintiffs allege that the bank defendants breached the warranty required in Regulation J that the electronic version of the check accurately reflected all of the information on the original check.   The bank defendants argue that Count I should be dismissed because plaintiffs have failed to plead a plausible claim for breach of warranty in violation of Regulation J.

Resolution of defendants' motion turns on the construction of the language of Regulation J. Applying basic rules of statutory construction, the Court begins with the language of the regulation itself. *E.g., U.S. v. Balint*, 201 F.3d 928, 932 (7th Cir. 2000)("When we interpret a statute, we look first to its language.") If the language is plain, the Court's job is simply to enforce it; it is where the language is not plain, or where it is subject to conflicting interpretation, that the analysis get a bit trickier. The Court's interpretation "is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy." *Balint*, 201 F.3d at 933 (citing *Grammatico v. United States*, 109 F.3d 1198, 1204 (7th Cir.1997)). The Federal Reserve Board's commentary is also instructive as to the meaning of a given word or phrase. *E.g., Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980); *Fogle v. William Chevrolet/GEO, Inc.*, No. 99 C 5960, 2000 WL 1129983, at *3 (N.D. Ill. Aug. 9, 2000)("considerable respect is due 'the interpretation given [a] statute by the officers or agency charged with its administration.' An agency's construction of its own regulations has been regarded as especially due that respect.")(quoting *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 (1978); *Udall v. Tallman*, 380 U.S. 1, 16 (1965)). *See also U.S. v. Vizcarra*, 668 F.3d 516, 520 (7th Cir. 2012)(commentary in the guidelines manual that interprets or explains a guideline is authoritative unless it is inconsistent with, or a plainly erroneous reading of, that guideline."); *U.S. v. Mitchell*, 353 F.3d 552, (7th Cir. 2003)(treating the USSC's commentary to the guideline as authoritative).

Thus, we turn first to the relevant statutory language, which is Regulation J.

According to the Board of Governors of the Federal Reserve System (the governing body of the Federal Reserve System and the agency charged with promulgating rules and regulations governing the Federal Reserve System):

> "Regulation J provides the legal framework for depository institutions to collect checks and other items and to settle balances through the Federal Reserve System. The regulation specifies terms and conditions under which Federal Reserve Banks will receive items for collection from and present items to depository institutions. In conjunction with Regulation CC, Regulation J establishes rules under which depository institutions may return unpaid checks through Reserve Banks."

Board of Governors of the Federal Reserve System, Compliance Guide, Regulation J (http://www.federalreserve.gov/bankinforeg/regjcg.htm). Regulation J consists of two subparts: Subpart A, which addresses the collection of checks and other items by Federal Reserve Banks; and Subpart B, which deals with Funds Transfers through Fedwire. For present purposes only Subpart A is relevant, and particularly Section 210.6 of Subpart A, which addresses "[s]tatus, warranties, and liabilities of Reserve Bank." 12 C.F.R. §210.6.

Under Regulation J, when a Reserve Bank presents or sends an item, it "warrants to a subsequent collecting bank and to the paying bank and any other payor that—

> (i) The Reserve Bank is a person entitled to enforce the item (or is authorized to obtain payment of the item on behalf of a person that is either entitled to enforce the item or authorized to obtain payment on behalf of a person entitled to enforce the item);

> (ii) The item has not been altered; and

> (iii) The item bears all indorsements applied by parties that previously handled the item, in paper or electronic form, for forward collection or return. 12 C.F.R. §210.6(b).

Additionally, with respect to "electronic items," the "Reserve Bank makes all the warranties set forth in and subject to the terms of 4–207 of the [Uniform Commercial Code] for an electronic item as if it were an item subject to the U.C.C. and makes the warranties set forth in and subject to the terms of § 229.34(c) and (d) of this chapter for an electronic item as if it were a check subject to that section."  12 C.F.R. § 210.6 (b)(2).  For electronic items that are not representations of substitute checks, the following applies:

> (i) If the electronic item is not a representation of a substitute check, the Reserve Bank warrants to the bank to which it transfers or presents that item that—

> (A) The electronic image portion of the item accurately represents all of the information on the front and back of the original check as of the time that the original check was truncated; the information portion of the item contains a record of all MICR–line information required for a substitute check under § 229.2(aaa) of this chapter; and the item conforms to the technical standards for an electronic item set forth in an operating circular; and

> (B) No person will receive a transfer, presentment, or return of, or otherwise be charged for, the electronic item, the original item, or a paper or electronic representation of the original item such that the person will be asked to make payment based on an item it already has paid.

12 C.F.R. § 210.6 (b)(3).

Plaintiffs allege that the electronic image portion of the second check did not accurately represent all of the information on the front and back of the original check as of the time that the original check was truncated.  Plaintiffs allege that "Atlanta Fed, as agent of RBS Citizens and sub-agent of Goodson, warranted to First American upon presenting electronic check no. 191435 for payment that '[t]he

electronic image portion of the item accurately represents all of the information on the front and back of the original check as of the time that the original check was truncated.'" Amended Complaint [6], ¶35. In fact, they allege, the original check stock "contained certain security features on each check, including 'MicroPrint' on signature lines, an 'Original Document' watermark and a 'Padlock' icon." *Id.*, ¶36. The check presented "was a poor image" and "did not accurately represent all of the information on the front and back of the original check as of the time that the original check was truncated." *Id.*, ¶37. Thus, under "12 C.F.R. §210.6(b)(3)(A), the Atlanta Fed, as agent for RBS Citizens and sub-agent for Goodson, is liable to First American and FIC for breach of warranty with regard to the presentment of electronic check no. 191435." *Id.*, ¶38.

Plaintiffs' complaint alleges that the defendants breached the Regulation J warranty that the information on the front and back of the electronic image of the check they transferred accurately reflected the information on the front and back of the original check. At a status and motion hearing on March 31, 2015, counsel for the plaintiffs represented that the check reflected an inaccurate copy of the security image box on the back of the check. Counsel could not articulate any other inaccuracies or any other aspect in which the electronic image was different from the original check. Thus, as alleged, plaintiffs' Regulation J claim is that the electronic check did not accurately reflect the security features of the original check.

The defendants argue that the lack of security features does not amount to a breach of the "all information" warranty. The plaintiffs dispute this assertion. The

parties agree that Regulation J does not define what specific information falls within the phrase "all of the information on the front and back of the original check as of the time that the original check was truncated."  Regulation J, however, instructs that unless "the context otherwise requires . . . [t]he terms not defined herein have the meanings set forth in §229.2 of this chapter applicable to subpart C or subpart D of part 229 of this chapter, as appropriate . . ."  12 C.F.R. §210.2(s)(1).  This language refers to Regulation CC, also promulgated by the Federal Reserve Board.

Regulation CC implements the Expedited Funds Availability Act, which "addresses the issue of delayed availability of funds by banks.  The EFAA requires banks to: (1) make funds deposited in transaction accounts available to their customers within specified time frames; (2) pay interest on interest-bearing transaction accounts not later than the day the bank receives credit; and (3) disclose their funds-availability policies to their customers."  Board of Governors of the Federal Reserve System, Compliance Guide, Regulation CC (http://www.federalreserve.gov/bankinforeg/regcccg.htm).  Regulation CC is divided into four subparts: Subpart A defines terms and outlines enforcement authority; Subpart B specifies schedules within which banks must make funds available for withdrawal, exceptions to the schedules, disclosure of funds-availability policies, and payment of interest; Subpart C contains rules to speed the collection and return of checks; and Subpart D contains provisions that pertain to substitute checks.  The

Regulation also includes several appendices, including Appendix E to Part 229 –

Commentary.

Subpart D deals with substitute checks. §229.51, entitled "General

provisions governing substitute checks" provides that a

> substitute check for which a bank has provided the warranties
> described in §229.52 is the legal equivalent of an original check for all
> persons and all purposes, including any provision of federal or state
> law, if the substitute check—
> (1) **Accurately represents all of the information on the
> front and back of the original check as of the time the original
> check was truncated**; and
>
> (2) Bears the legend, "This is a legal copy of your check. You can
> use it the same way you would use the original check."

12 C.F.R. §229.51 (emphasis added). Regulation CC uses the same language as

Regulation J. And, unlike Regulation J, Regulation CC also provides instructive

commentary concerning what the phrase "all of the information" means in the

context of a warranty concerning the accuracy of "all of the information on the front

and back of the original check as of the time the original check was truncated." In

particular, the commentary makes clear that the warranty does not require that the

security features visible on the original check be included on the electronic item. By

way of example, the Federal Reserve Board instructs as follows:

> 3. To be the legal equivalent of the original check, a substitute
> check must accurately represent all the information on the front and
> back of the check as of the time the original check was truncated. An
> accurate representation of information that was illegible on the
> original check would satisfy this requirement. The payment
> instructions placed on the check by, or as authorized by, the drawer,
> such as the amount of the check, the payee, and the drawer's
> signature, must be accurately represented, because that information is
> an essential element of a negotiable instrument. Other information

that must be accurately represented includes (1) the information identifying the drawer and the paying bank that is preprinted on the check, including the MICR line; and (2) other information placed on the check prior to the time an image of the check is captured, such as any required identification written on the front of the check and any indorsements applied to the back of the check. **A substitute check need not capture other characteristics of the check, such as watermarks, microprinting, or other physical security features that cannot survive the imaging process or decorative images, in order to meet the accuracy requirement. Conversely, some security features that are latent on the original check might become visible as a result of the check imaging process. For example, the original check might have a faint representation of the word "void" that will appear more clearly on a photocopied or electronic image of the check.** Provided the inclusion of the clearer version of the word on the image used to create a substitute check did not obscure the required information listed above, a substitute check that contained such information could be the legal equivalent of an original check under §229.51(a). However, if a person suffered a loss due to receipt of such a substitute check instead of the original check, that person could have an indemnity claim under §229.53 and, in the case of a consumer, an expedited recredit claim under §229.54.

12 C.F.R. Part 229, Appendix E, XXX. §229.51(a)(emphasis added). Based upon the plain language of Regulation J, as interpreted using the authoritative commentary from Regulation CC, the failure to include security features on an electronic check cannot give rise to a breach of warranty claim. Accordingly, plaintiff's claim for breach of warranty under Regulation J – which relates solely to the lack of security features – fails as a matter of law.

Plaintiffs have also emphasized that the security box on the back of the electronic version of the check was illegible, as shown by the copy of the check that is attached as Exhibit C to the Amended Complaint. Significantly, plaintiffs do not allege that the security box was different on the original check. Again, the Federal

Reserve Board's commentary is instructive; it provides that an "accurate representation of information that was illegible on the original check would satisfy [the legal equivalence] requirement." 12 C.F.R. §229.51(a), Part 229, Appendix E. Thus, if the security box was illegible on the original check, there would be no breach of warranty.

Finally, Regulation J is clear that the bank defendants may be liable only for their lack of good faith or their failure to exercise ordinary care. 12 C.F.R. §210.6 (b)(1). Yet the plaintiffs do not allege either in connection with the Regulation J claim. Thus, the plaintiffs' claim would fail as a matter of law for this reason as well.

B.    Plaintiffs' Claim for Restitution

In Count II, plaintiff seeks restitution for payment by mistake under the Illinois Uniform Commercial Code, 810 ILCS 5/3-418. In particular, plaintiffs allege that "First American paid check no. 191435 to the Atlanta Fed, as agent for RBS Citizens and sub-agent for Goodson under 12 C.F.R. §210.6(a)(1), for the benefit of RBS Citizens and Goodson" and that when "First American paid check no. 191435, it did so on the mistaken belief that the signature of the drawer of the check no. 191435, [First Aid Corporation], was authorized." Amended Complaint, ¶¶41-41.

The Illinois UCC provision relating to restitution for payment or acceptance by mistake provides:

(a) Except as provided in subsection (c), if the drawee of a draft pays or accepts the draft and the drawee acted on the mistaken belief that (i) payment of the draft had not been stopped under Section 4-403 or (ii) the signature of the drawer of the draft was authorized, the drawee

may recover the amount of the draft from the person to whom or for whose benefit payment was made or, in the case of acceptance, may revoke the acceptance. . . .

(b) Except as provided in subsection (c), if an instrument has been paid or accepted by mistake and the case is not covered by subsection (a), the person paying or accepting may, to the extent permitted by the law governing mistake and restitution, (i) recover the payment from the person to whom or for whose benefit payment was made or (ii) in the case of acceptance, may revoke the acceptance. 810 ILCS 5/3-418(a), (b).

Initially, although the amended complaint does allege that payment was made for the benefit of RBS, it does not allege that payment was made for the benefit of the Federal Reserve Bank of Atlanta. This is required under the statute.

Additionally, the statute itself provides that the remedies provided therein "may not be asserted against a person who took the instrument in good faith and for value or who in good faith changed position in reliance on the payment or acceptance." 810 ILCS 5/3-418(c). As noted above, there is no allegation of bad faith on the part of RBS. Thus, as pled, it does not state a plausible claim under the Illinois statute.

Finally, as discussed above, the Federal Reserve Board's Regulation J expressly limits a Reserve Bank's liability. Imposing liability under the facts alleged here would conflict with those limits (as discussed above). "Where state and federal law 'directly conflict,' state law must give way." *Hillman v. Maretta*, 133 S.Ct. 1943, 1955 (2013)(quoting *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567, 2577, 180 L.Ed.2d 580 (2011); *Wyeth v. Levine*, 555 U.S. 555, 583 (2009)).

C.    Plaintiffs' Negligent Spoliation Claim

In Count III, plaintiffs allege negligent spoliation of evidence. They allege that RBS destroyed check no. 191435 when it knew that the check was drawn on First American, and it knew or should have known that the check was part of a fraudulent scheme to steal funds on account at First American. Amended Complaint [6], ¶45. "A spoliation plaintiff is required to prove the elements of negligence, including that: (1) the spoliation defendant owed the plaintiff a duty to preserve the evidence; (2) the spoliation defendant breached the duty by failing to preserve the evidence; (3) the loss of the evidence proximately caused the spoliation plaintiff to be unable to prove an underlying lawsuit; and (4) the spoliation plaintiff suffered damages." *Jones v. UPR Products, Inc.*, No. 14 C 1248, 2015 WL 3463367, at * 3 (N.D. Ill. May 29, 2015)(citing *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill.App.Ct.2012).

"A claim of spoliation of evidence is connected to the merits of the underlying suit." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 510 (7th Cir. 2007) (citing *Gawley v. Ind. Univ.*, 276 F.3d 301, 316 (7th Cir. 2001)). "If a plaintiff cannot prevail in the underlying suit even with the allegedly lost or destroyed evidence, then a claim for spoliation will fail because the plaintiff cannot prove damages." *Id.* As explained above, plaintiffs' Regulation J claim fails because they have not, and cannot, show that the defendants inaccurately represented the original check. In light of this analysis, plaintiffs' spoliation claim fails as well.

Plaintiffs cannot show that the loss of the original check prevents them from proving their claim.

<u>Conclusion</u>

For the reasons explained above, the motion to dismiss filed by defendants Federal Reserve Bank of Atlanta and RBS Citizens, N.A. [21] is granted. Plaintiffs' amended complaint is dismissed as to these defendants.

Dated: June 25, 2015

ENTERED:

_____

John Robert Blakey
United States District Judge